Please be seated. Your Honor, the second case on the docket this morning is 2-17-0750. The people of the state of Illinois, Clinton, Appalachia, and Jacksonville v. Keller v. Keller. Everything on the docket represents Mr. Douglas H. Johnson. Everything on the docket represents his name, his opinions, and his approach. Mr. Johnson. May it please the court, counsel. I am Douglas Johnson. I represent the defendant, Appellant, who is currently serving 70 years, pursuant to his first degree murder conviction. Part of the evidence that he was convicted on was a statement he made to his old college buddy. This is the second issue in our brief I'd like to address. The trial judge, the learned trial judge, said it was an interesting question, and I think it is. It was an overhear. I know this court has recently addressed overhears, and actually very recently, between me and Gallardo and Yang previously in, I think, 2013, and Allard, if I'm pronouncing that right. Yang was in Rule 23 order. It was, and I'm not citing it for precedent. Well, you've cited it in your brief, and that's improper. The state, it was cited below, and I understand Your Honor's point, but I believe that we're not citing it for precedent, but I believe just to mention that this issue has been somewhat touched on. Here, the defendant, what happened was, I believe the facts are somewhat undisputed, so I think this is a de novo review when we're talking about statutory interpretation. What happened here is the defendant was overheard with his college buddy, making statements that actually would later be used to provide the motive for the killing, and then the tapes were not returned. Seventy-seven days later, the judge would sign, a different judge than the one that submitted, the one that approved the overhear. They were returned to him. Seventy-seven days later, and there's, it is unknown why that happened. So we do have a significant delay here. Can I ask you a pointed question? Do you have any, can you call our attention to a specific statutory authority or case law authority that says the failure to comply with this, the remedy for the failure to comply is suppression? Do you have any Illinois case authority that says that? I have not, there is no case directly on that point, but I believe what we have here is we have, if I'm pronouncing the case, the name right, Neves. In Neves, based on Angelini and Lawson, the Neves decision was handed down, but then along came Ocol Rios in 1990. You do this throughout your brief. Wiretaps and eavesdropping are two separate, two separate things. A wiretap is a non-consensual, surreptitious recording of parties engaging in conversation, which invokes the right of privacy in the Fourth Amendment, and eavesdropping does not. Eavesdropping order with consent does not involve any Fourth Amendment issues. Do you agree? I would not. Okay. What I would say, Judge, is that we are, we should, and I know the State's argument is, well, this is 108A-B, so this is 108A. So why are we talking about a Federal statute that addresses two-party consents? And I say that focus, why are we talking about the Title II, the Title III, when really what we should look at is the focus on the defendant's privacy right? The defendant has no right of privacy. The Illinois Supreme Court, the United States Supreme Court, have made clear that a person who is engaging in conversation and revealing his or her criminal conduct to an acquaintance, to an accomplice, has no reasonable expectation of privacy in the conversation, whether or not that person is merely relating what was said or that conversation is being recorded. That's United States v. White. Would you agree? Well, under the facts of this case, Mr. Keller is being recorded. And what happens later is that these tapes are not maintained like nothing. We know nothing about what happened. All we know is that these tapes were submitted, were used against Mr. Keller at his bond hearing. He didn't receive any notice. That violates Illinois law and Federal law. Let me ask you this question. Does a person who is disclosing to another person the details of his or her crimes have a reasonable expectation that those details will remain private? No, I'm addressing the recording. I'm asking you this question. I agree. No, I agree that that is admissible against him. The eavesdropping statute that was in effect at the time of the offense was ultimately held unconstitutional by the Illinois Supreme Court. Are you aware of that? Yes. P v. Clark. Yes. By the time the case went to trial, there was a new law in effect, correct? Yes. Are you familiar with that? Yes. And what's a private conversation under the new law? I'm not that familiar with it, Your Honor. It's not raised in the state's case. Well, this would govern the admissibility of that evidence, wouldn't it? No, I don't believe so. If, by the time you went to trial, there was no order required, all your arguments about compliance with 108A go out the window, don't they? I don't believe so, Your Honor. Why is that? And, again, this is not something raised by the state in their brief. Well, we have an obligation to review the briefs and the issues that arise from the briefs, correct? Of course, Your Honor. Okay. Is there a case, as Justice Hudson asked, is there a case that supports your argument that technical violations that don't infringe on the substantive rights of the accused warrant suppression of an age-dropping application or an age-dropping order? Expressly, no. But I believe if we look at the way this law has developed through and we talk about technical violations, first, I think this is a far less technical violation in violation of federal law and state law. I think we can all agree it was violent. Do you talk about the delay? The delay is much less technical. The delay is what I'm focusing on here. Notice is a problem. I mean, you don't get any notice. We're not going to return the tapes on immediately. We're going to wait 77 days, and we're going to give them to the other judge. Everything was flagrantly disregarded. You can see there's no state authority supporting the suppression for a violation, technical violation. Well, it's the – I look at the Allard case. What could be more technical than a state's attorney, elected state's attorney, or an ASA? How is that less technical than what we're talking about here? Well, what's the case that says that the sanction is suppression? I keep asking you. You're talking about – And I told you, I don't have one expressly saying that the sanction is suppression, but I think it's appropriate here under the satisfaction – Let me respond to this argument then. Didn't the legislature provide the penalty for failure to comply with the section? The officer could be committing an offense. No, I – Are you not aware of that? I am not aware of that. I'm prepared to respond to the state's arguments. Okay. And what happened here is that we have a violation of both federal law and state law. And so the only question is the remedy. What violation of federal law? The delay. Why? Because if you look at Ocorridos, based on Lawson and Angelino – That was a wiretapping case. Title III specifically excludes from coverage of the act consensual recordings. I believe that Title III, as the state pointed out, it says that there shall be no violation of the law by someone such as Schweigert if he wears a wire. And we're not trying to get Schweigert in trouble. But what we are saying is that they would not have needed to write that if the privacy rights to an individual are not contemplated under these principles. And, again – NEF stands for the proposition. The test is whether the purpose of the act has been fulfilled despite failure to adhere to the immediacy requirement. Yes, and the purpose has certainly not been fulfilled. How is that? How – 77 days. The state seeks to put a burden on us. Okay. Prove that we – prove that we didn't tamper with it. I submit no – There's no allegation that the tapes were tampered with. Here's what I'm getting at. The state seeks to put a burden. There's no allegation that states were tampered with or – so it is the defendant's burden to prove they were tampered with. And what I'm saying is, no, I cannot point to you an allegation that Mr. DeLuca came up and said, oh, they were tampered with, they were tampered with. He didn't know and he couldn't in good faith argue that. But 77 days, I believe, and there is no express case I can point to you where there's a presumption of tampering. I submit to you that it is more appropriate in this case where we have a 77-day delay to ask the prosecution, who has, again, not given notice, not returned it to the right judge, done it after 77 days, what's going on? And so, no, I cannot – how would a defendant ever say, oh, here's how they tampered with it? It's an impossible burden. If this kind of – And I'm going to ask you a question. You're going to come back to the central underlying theme then. So even if your arguments were taken there was a violation of the statute, what's the remedy? Correct. Did you look at 103.8 that provides any police officer or employee who knowingly or intentionally fails to comply with the provisions of this section is guilty of official misconduct? There's a sanction in the statute. Okay. There's a sanction that helps – that addresses this person's right to privacy. And I don't think – showing that it has no meaning, it didn't happen here as far as I can see from this record. Counsel, assume for the moment that the trial court erred with respect to this over here in this case. You would agree that our review of this case then, if we found error, would be a harmless error analysis. Is that correct? If we got that far, absolutely. It was a harmless error. And so when you look at the potential error in this case regarding the over here, wouldn't Mr. Seigert have been able to testify to what is on the over here? Absolutely, he would have. However, he would have been subject to cross-examination. He was – this, for first – So are you alleging that what is on the over here is incorrect? It was in any way altered or modified from the actual conversation? I can't allege on – no, absolutely not. I can't allege more than is in the record below. But you didn't raise that in your brief, that this was some kind of way doctored up statement. Is that correct? I can't make that allegation. The only – with regard to tampering and the intent of the statute, all I can say is that if we are going to allow this to stand, that we have a 77 delay and all sorts of violations. I don't think that's in dispute. The only question is the remedy. In the absence of Supreme Court, specifically discuss the fact that the defendant did not allege that the recordings were tampered with. And there was no allegation here. How – we're bound by NAFSA. I don't – We must follow that precedent. Would you agree? We are not – we are asking about preemption. And I don't believe that requires you to overturn NAFSA. And I believe we passed the NAFSA test also. Again, we're in the absence – the court just looked at the immediacy requirement in Title III and compared it to our statute. They're very similar. That's what – that's all they did. They didn't say that Title III preempts the Illinois – No, they did not. So where do you get this argument that Title III preempts our e-shopping statutes? Well, I think it was touched on in the Gallardo decision or Allard. It escapes me now. One of the two in the very last – Allard is a wiretap case. The – but again, I understand. If you make the decision that – We don't have to make that decision. That decision has been made. Title III does not cover consensual recordings. And I submit to you that in this context, no case has ever said that. There is no case out there that says these concerns absolutely do not apply. And, in fact, the case Yang talks about how potentially, actually, Oco Rios could be persuasive authority. And that was 2013, well after these. Yang is a rule 23 order. I don't think, though, we could – again, I'm not saying you're bound by it, but I think it goes along with what I'm – You can't argue it. All right. I won't reference it again, Your Honor. But what I'm saying is there is also a preemption. I mean, we talked about preemption in Yang. I'm sorry. Even though they're 108A or B, Gallardo, for instance, was an ineffective assistive counsel case. And it said we're going to look at the similarity of the words of the statute and – What prejudice did your client suffer in this case? The prejudice the client suffered is that on the tape, on the tape, they were able to present it against the defendant. And during a cross-examination, they were able to impeach him. So the truth came out. Well, I don't know that, Your Honor. What's the prejudice? Is that the prejudice? The prejudice is that this provided the motive against Mr. Keller. And I would not say the truth came out. We have two drunken – He would have been impeached with the – If the defendant testified, those suppressed tapes would have been available for impeachment. They would have been available for impeachment. However, that could have changed the whole way. Maybe he wouldn't testify. Who knows? That would have been a strategic decision made by trial counsel. Counsel, you could spend all of your time on the suppression issue over here. Is there anything else you want to address this morning? Your Honor, to move to issue one, I think it shows, too, that now we have the suppression issue where all sorts of law, I believe, were violated. I mean, again, we have to go back. The law was violated, as Your Honor said. The question is, what's the remedy? Back to issue one, what should have happened here, I believe, is that Mr. Keller should have been confronted and arrested. I mean, they had the over here at that point when they confronted him in his office garage. Do you have a case that supports that proposition,  No, I don't, Your Honor. I mean, you make that argument that you basically, you know, say that police are, that this is, you know, they're just being mean. It's tricky. Forget your exact phraseology, but there's no authority for that. Well, I have a statute that talks about how Mr. Keller is entitled to be told the reason he is being arrested. And Judge McAllist found that he was told that they were conducting a homicide investigation, correct? Correct. There's no dispute that he knew he was involved in a homicide, correct? I'm talking about what he needs to be told. And he was told at the scene of his arrest that the police were conducting a homicide investigation and they'd like to ask him questions about it, correct? May I continue? Well, they have to specify first-degree murder and voluntary, and isn't homicide telling him what the gist of what they're investigating? They're investigating a homicide, but I believe under the statute he is entitled to say, you are under arrest for your participation in a homicide, not we're investigating a homicide. If I walk out here and someone says, we're arresting you for a homicide, that's a little bit different than, Mr. Johnson, I want to talk to you about a homicide. One of the very cases you cite from foreign jurisdiction, Hayes v. Commonwealth, says that the statute requires substantial compliance. They have a similar statute to ours. And I think the other case that you cite, neither one of them supports your position. Neither one. Again, the remedy, we're talking about remedies here. The statute states, tell the defendant what he is under arrest for, and that was not done here. And then we go on to the Miranda warnings. What does McGuire say? I don't know, Your Honor. McGuire says that violations of 103 do not warrant suppression. The statute has its own sanction. Your Honor, I... So we're blazing new trails here? We're going to ignore McGuire? We're going to ignore Nieves? I think the prosecution blazed a lot of new trails. In fact, Judge McAuliffe did say, well, the Miranda warnings, I don't like the way they were given, but they were inartfully given, but, you know, they got the point across. So we have, you know, well, he wasn't totally told why he was under arrest. The Miranda warnings weren't given right. They didn't comply with the law with the over here, but this is a... You don't like the Miranda warnings given? I'm quoting Judge McAuliffe. They were inartfully given, not the way he'd like to see them. Let's assume they were given without the requisite enthusiasm you would prefer. And I wrestled with this when I was reviewing the case. How do we come up to a rule of law that applies? And do we say that... How do we determine whether or not the Miranda warnings are given with the requisite degree of enthusiasm? Well, I don't... How do we announce a rule that covers that issue? I think, Your Honor, when you look at the totality of the circumstances and you see one thing after the other, you can see that what happened here is... And the police can trick, they can lie. We all understand that. But when you look at these continuous things that happen throughout here, no notice given, arrested, not told, Miranda warnings, I'm not saying a hard and fast rule that they have to be given. The law does not require to be given a certain way, a certain tone. But when you look at all, did the police gain an advantage in the way they did this? I believe they did. Well, I mean, there's another perspective from society's viewpoint that the police and the prosecutors worked together to make a plan where they could comply with the defendant's rights and gather as much possible evidence that's available out there. Right? Yeah, fairly. And we should condemn that? We should not have police giving Miranda warnings that are inartfully given when we know they know how to give them. The defendant testified that he understood his Miranda warnings. On a cross-examination by the state, he acknowledged that he understood. He knew what his rights were. But it was the officer who was doing the questioning that kept interrupting his ability to invoke his rights, right? That's actually it. Right. I think we're forgetting that he was, the police denied that he was under arrest at the parking garage, but the court found that he was. Still, we have no Miranda warnings. The Miranda warnings shouldn't have been given at that point. They were not. Miranda is to be given prior to any custodial interrogation. There was no custodial interrogation until after the rights were given. Well, I think that Judge McAllistown, he was in custody in the parking garage. But then Miranda doesn't require Miranda warnings at the time of the arrest, only for the questioning. Right, for the interrogation. I understand that. But I think, again, I'm going with, yes, the police were found to be credible on this point of when they actually interrogated him and talked to him. On the issue of credibility, Judge McAllist did not believe your claim with regard to implication of his rights, with regard to whether or not he understood his rights, correct? Correct. And with regard to his statement that he asked for a lawyer at the scene of the arrest and that he was denying the use of the cell phone. On all four of those, Judge McAllist did not believe him, correct? Right. How do we overturn that? It, again, goes back to the totality of the circumstances. That's manifestly. Well, right, and we say, again, it's a hard mountain to climb to come here with a credibility argument. I understand that. But you do have a situation here where we have a police officer that was heavily involved in the arrest who just didn't file a report. And so I think that. Anything else? You'll have time for a rebuttal. Thank you, Judge. Thank you, Mr. Johnson. Counsel, Ms. Wotroba. Good morning, Your Honors. Counsel, may it please the Court. My name is Amy Wotroba. I'm an assistant state's attorney in DuPage County, here on behalf of the people of the state of Illinois. I think I'd like to start with a brief introduction. This is a subject that Your Honors touched upon briefly, and that is even if you were to accept the defendant's arguments on either or both of the claims of error on Issues 1 and 2, and you were to find that either or both pieces of evidence should have been suppressed, any error was harmless beyond a reasonable doubt. The defendant in this case testified and admitted to shooting the victim, Nate Fox. His claim was that this was some type of accidental encounter, and the jury was instructed accordingly on involuntary manslaughter. The defendant's testimony and his story was fantastical, and it was about how he basically found himself at Nate's, at Mr. Fox's home, happened to have a gun. There's no sufficiency of the evidence argument. Can you focus on the issues raised? Yes. Do you agree that there were technical violations of the eavesdropping of the 108A, Article 108A? I do not agree that based on this record that can be said no. I believe that the way that it was litigated... And there's no time violation? The way that it was litigated below, Your Honor, is that the motions with respect to the eavesdrop recordings, which were brought just a week or two before trial, the way that they were developed was that the State's legal arguments below were essentially even if you assume a technical violation, there's no remedy here because there's under the testament... I know that, but he's trying to ask you, did you comply with the State's statutory time requirement? Yes or no? I believe based on this record, yes, and I believe that based on, and I can find the case... Counsel, didn't you... I'm sorry. Go ahead. Didn't you argue that the failure to comply with the Illinois wiretapping law would have been ultimately waived by the judge? So isn't that, in fact, your agreement that there was some technical violation? Well, I think that, so, Your Honor, there were two prongs to the defendant's complaints about the eavesdropping. The first was a claimed notice violation, and that was based on the fact that, and that's a different provision of the statute, it's provision 8-A, and that's the 10 days notice prior to their use at a hearing. And the defendant's complaint on that had to do, was dated back two years to the bond hearing and the grand jury proceedings. So that 10-day notice requirement had to do with that. And so the State argued that that argument, if there was one to be made, should have been brought prior to the bond hearing because there is specifically a provision in the statute that says that that could be waived by the judge. But you're sidestepping it. As a matter of pellet argument, when the point is made directly, you don't want to sidestep the argument. There may have been a justification, a good one, why the 10-day rule couldn't have been followed. But the question is, was 10-day notice given? Period. 10-day notice was not given because... Okay. Well, that's all I want to know. What about returning the tapes to the judge that authorized the overdue? Was that done in strict compliance with the time limits of the statute? Strict compliance? I don't know if strict compliance is... What's the time limit? I'm asking a narrow question. The time limit is immediately. So there is case law that kind of differs on what is immediate, and that's where you get into the three-step NIAS test, which is, just as Burkett pointed out, is the governing test here, because there's no question that Federal law does not apply. There's been no Federal preemption of any sort with respects to eavesdrop. So would you... The purpose of the eavesdropping statute, both 108A as well as 14-1, 2, 3, the exemptions, which by now pretty much swallow the statute, are to protect conversational privacy, correct? I believe so, yes. That it's reasonable. Correct. So in your briefs you don't address the fact that the Illinois Supreme Court held the Illinois eavesdropping statute unconstitutional because it covered all conversation, not just private conversation. You also don't address the fact that 108A is also changed. A court order is no longer required and was not required at the time of trial. If it's a qualified offense, the State's attorney can authorize an eavesdrop and then the State's attorney has to file a report at the end of the year. Are you familiar with those changes in the law? I'm looking at the current statute. Maybe we should ask for additional briefing. If it's a qualified offense, the State's attorney, for a homicide, can give the police authority to conduct an overhear without a court order, correct? I believe so, yes. But as you said, because of that. So how does that change in the law? The fact that there was no, at the time of this offense, there was essentially because the statute had been found unconstitutional, there was no, I mean, Mr. Schweiger could have on his own recorded the conversations. It would further the State's position, overall position, which is that no suppression was warranted here. But as Your Honor did say, there was the different statutes in place at the time of the recording and obviously the change by the time of trial. It was litigated below under the statutes as discussed both in the defendant's brief and our response was predicated on that. Perhaps the most somewhat inartful way for me to say this is that I wouldn't generally chase an argument that I didn't need to chase. If I believe that under Nieves and the statutes and the way it was decided below by the trial court, which we all agree that Nieves is still good law, insofar as if you're looking at an issue of compliance, which is to look and see what the purpose of the statute is and was that complied with. And in a case like this where there's been no allegation of tampering, and I would point out that Mr. Schweiger did testify at trial that the recordings as played, that he had listened to them and that they were correct, that there was no allegation of tampering. So that the technical, whether there was or wasn't a technical violation, the argument below was framed very much as a foundational argument, which is why we believe not to get into a debate about abuse or the standard of review, but the way it was framed, it was somewhat of an abuse of discretion evidentiary kind of issue where the judge was being asked. And it was renewed during trial on that same basis.  But the end result is the same. And that is that it was rightfully admitted. And as Your Honors have pointed out, even if it had been, even if the e-strap recording themselves had been suppressed as substantive evidence, Mr. Schweiger also would have, still would have been able to testify to the contents of the conversation during his testimony. And based on the fact that the defendant testified, then the recordings could have been admitted for impeachment purposes. The rule we announced in this case, of course, would apply to this case and would be prospective. Of course. Obviously the State could not have complied with the 10-day requirements for the bond hearing. Correct. So is there any type of a record that should be made? Should there be sort of a preliminary hearing about the State's inability to comply and why? If this were to happen again, or would we just say it's a bond call and just ignore the 10-day? I think perhaps. I don't think there needs to be a preliminary hearing. I think perhaps maybe, I don't want to say best practices, but if this were to come up, it could certainly just be brought up before the bond court judge, since it's up to the judge to waive that anyway. Right. And was that discussion had in this case? It was not. And I think probably because the recordings were not actually used, and the statute contemplates use of the recordings, they weren't used. It was simply referenced.  I don't, in the motion, at the hearing I believe they were. Yes. They were not used to deny bail. They were simply referenced. The fact that the conversations were recorded. And then obviously following that, all the proper notice provisions were complied with as far as sending notice to the defendant, and then obviously discovery rules as well. So the State could ask for a waiver, are you saying, of the 10-day notice on the circumstances? If they were going to use them, absolutely. Or the defense could bring it up. But the defense was aware. What was put on notice, it's just an issue of that 10 days, which obviously in a case where you have arrest and you have to appear before a bond court judge in a short period of time. You probably won't have 10 days. Exactly. You won't have 10 days. Your argument is that that objection should have been made at the time. Correct. Correct. That was our primary argument, yes. And I think that the judge, Judge McAllis, agreed. He did point out that this, as far as that 10-day notice requirement, it was not timely. It was something that the complaint has to do with its use at the hearing and the defendant not having notice that it's going to be used. He obviously had two years of notice that the eavesdrop recordings were going to be used at his trial, and he had them in his possession for those years as well. Briefly on the motion to suppress statements issue, I think that obviously the trial court's judgment was based largely on its credibility determinations, which we do not believe were against the manifest weight of the evidence. Judge McAllis articulated specific reasons for his findings, correct? He did, in fact, yes. Specific down to facts such as the defendant had a cell phone in his pocket, even though he claimed that he kept asking the police for his cell phone. I think what's really crucial to reviewing the propriety of the judgment below is the video itself. As we argue in our brief, it's very clear on all points. The defendant's main complaint is that there was some type of deception with the presentation of the Miranda rights. I think it's very clear from watching the video that while, as the judge did find this, perhaps the officers, quote-unquote, maybe downplayed, as opposed to, as Your Honor mentioned, how much enthusiasm should they use when they hand a defendant his written rights and they discuss them with him. A lot of the, quote-unquote, confusion stemmed from the defendant himself, who started feigning ignorance and hedging on whether understanding and waiver was the same thing. But what's important, I believe it's approximately a four-minute conversation that's had from approximately 1958 to 2003, roughly, on the videotape. Those are the time stamps. That the detectives on at least four occasions, when defendant is the one creating the confusion, stop him and clarify and say, you have the right to stop this at any time. This indicates that you understand, that you're agreeing or waiving, basically, to be able to talk to us. That's a requirement for us to talk to you. But if at any time you want to stop this conversation, you can. The judge found that he understood, is that right? Absolutely. So he found that Miranda, the judge found Miranda was sufficient and that defendant understood and knowingly and voluntarily waived it. One of the arguments that the defense makes is that had he been told that he was under arrest for murder, not just a homicide investigation, maybe he would have invoked his rights earlier and that was acceptable. At the time he was taken into custody, had charges already been filed? Was there a complaint on file for murder? Well, he was, when he was, are you talking about the parking lot or when he was arrested? When he was arrested, when he was in the parking lot, because the trial court found that the arrest occurred there. The trial court found he was in custody, yes. Again, this was all a Fifth Amendment. Was there a complaint for first-degree murder already? Not that I'm aware of, no. He was arrested after his several hours of conversation with the police officers. So there was no complaint, no arrest warrant? Not that I'm aware of, no. I don't believe that there was. I don't recall one from the record. I looked at substantial portions of the record, but if he had been, would you agree, if there was a complaint for murder, compliance with the statute would have required, not just telling the defendant we're conducting a homicide investigation, they would have been required to tell him. Well, if there was a warrant, I think they would have been required to present him with the warrant. But he wasn't under, and again, not to split hairs, but I think it is a distinction, he wasn't under arrest, or at least that wasn't the intent of the officers. While later on during the Fifth Amendment proceedings, the judge did determine that for purposes of the Fifth Amendment analysis, which is determining issues of custodial interrogation, because defendant's main claim was that, or not main claim, one of his claims was that he was interrogated in the vehicle. So that's why he was arguing that he was in custody at the parking lot, and so therefore he should have been entitled to Miranda and the car, but he wasn't given it and he was interrogated. The judge kind of rejected that. The State never said, I believe, that they had planned to use any of the statements in the car. There weren't any substantive statements in the car. It was small talk about defendant's business. But I believe actually it was, and I don't recall the exact date, I think it was after the fact that Judge McAuliffe went back and just clarified and said, just so we're clear, the State hasn't said that they intend to use any conversations in the car, but if they did, they can't come in. And everyone agreed that when defendant invoked finally at the police station after a few hours, which was further evidence that he understood his rights, that we weren't going to use anything after that. So all that was at issue was the approximately two hours from the time he got to the Bloomingdale Police Station was a guise of Miranda and talked to the police whether that portion would come in. And again, harmless. He made no incriminating statements as far as he didn't admit to the murder. He told a lot of stories and lies, and obviously, you know, his behavior was very... And the court considered the fact that he had a previous occasion where he had in fact invoked his rights to counsel during an earlier interview. Correct. There was a previous domestic battery incident. The officer who arrested him testified that he arrested him on scene, advised him of his rights, and defendant immediately invoked his right to remain silent, yes. So that was additional evidence that he did understand his rights. He was arrested January 14th, and the complaint, according to the record, was January 15th. That sounds right, and the bond court was on the 16th, yes. So the police did not lie to him when they said they were conducting a homicide investigation. That's correct. I believe at that point... So this was... They had no suspect in this case. I mean, this case, while it was relatively new, had effectively gone cold until Mr. Schweiger contacted the police officers. They immediately flew him up here the next day, had a conversation with him. He agreed to a videotape statement, I believe. May I finish? Yes. I believe he testified before the grand jury and was locked in, and then the eavesdrop orders were obtained. Those calls were made on the 13th and 14th, I believe, and then it was the evening of the 14th that they went and picked the defendant up at his place of business. He was arrested, I believe, later that evening or early morning hours of the 15th. Complaint, bond court on the 16th. Thank you. For those reasons and those in our brief, we'd ask that you affirm the defendant's conviction. Thank you. Mr. Johnson. Thank you, Your Honor. I'd just like to make two points. With regard to the question about the 77 days, I believe that the only interpretation of this record is that the tapes were returned 77 days, and no way could that ever be construed as immediate. And I think that takes this away from Bradley, the Bradley case that the state cited in their brief, which did address 108A. Counsel, is there any tactical advantage gained by the state by that delay? I believe we don't know. Again, there is no allegation of tampering at the court below. I can't make that here, and I don't believe the odds are so much stacked against a criminal defendant. He doesn't know. Mr. DeLuca. He was a party to the conversations, and he obviously heard the tapes. So he had the opportunity to inform his lawyers whether or not he believed the tapes had been tampered with. Well, I think that's an impossible situation. I think when you can't recall exactly what was said and how it was said from conversations, I think common sense dictates you just can't remember exactly, and words matter in this case. And I was going to say that takes it away from Bradley, because in Bradley, the Court analyzed this situation, type of situation, with a delay, and then said, but there's no evidence of a delay here. And that's what that case was decided upon. So I don't think that controls here. Well, if the defendant himself, as Justice Brekett points out, would be the person who would have the best idea of what was said in the tape, is it making an allegation of tampering? Are we going to resume tampering? Or are you asking us to read into this thing? I am asking you not to. I understand, no. There is no case, and I looked for one trying to put a presumption in there, and there isn't. But there is also no case requiring the defendant to show tampering, and it's an impossible burden. So I'm asking you to not place the burden on the defendant and look at the delay and see if there's a substantial explanation. We're not saying that, oh, there's a – everybody's calling this a technical violation. Okay. We're not saying if you make a technical violation, then there must be suppression. We're saying you have to explain what happened. And the state was given every opportunity to do that, and we still don't know. Your Honor, ask counsel, was there a delay? And they're still saying there wasn't. I don't know how that can be. Well, the state gained no tactical advantage, and, yes, that we are bound by the Supreme Court's disposition and, yes, their opinion and, yes. And also, there is no question raised about the integrity of the tapes. Just merely saying maybe or it's impossible to determine does not raise a question about the integrity of the tapes, does it? Under this record, no. What I'm saying, though, is that we have a 77-day delay, so don't place the burden on the defendant. And with regard to Nieves, however it's said, I'm not asking you to overrule the Supreme Court, but that's why we get into preemption. The federal law was violated here. And I understand your point, your questions regarding whether or not that statute should be considered. I submit to you it should be considered because the wording is almost identical. It was a different type of a deal. You were talking about an older federal statute dealing with something else, correct? But I think the defendant's privacy and the defendant, when being recorded, it shouldn't be considered. Lastly, on the 10-day notice, it clearly was violated. If we talk about did the state get an advantage there, I absolutely believe the state had an advantage. First, the argument is, well, it was impossible to give notice. Well, no, it wasn't impossible to give notice. I mean, they didn't have to raise the recording at that point. If they had overwhelming evidence without the recording, then they didn't need to raise it. They could have gone through. What would you do in a situation where the bond calls a few days after the overrule? Literally, they couldn't comply with the 10-day notice before the bond call. They couldn't because they don't have all the paperwork in order, I submit. So what do they do then? I submit they perhaps give notice somehow to the defense attorney. Or ask for a waiver from the judge, like the statute allows. And they talk about how this argument was waived, and the state does. But as you can see on page 811 to 812 of the record, Attorney DeLuca is asking for more documentation. He's saying, we need to analyze it. We have an issue here, and we can't get it. And we still don't know why the 77, I guess, Your Honor, has a question. No. You just brought up again the defendant's right to privacy in the context of 108A. Again, a reasonable expectation of privacy has to be, has to exist. And the United States Supreme Court and our court, actually the General Assembly, said under the Constitution, and under the Constitution, the United States Constitution and the Constitution of the state of Illinois, the defendant has to have exhibited not only a subjective expectation of privacy, but that expectation has to be one that society is prepared to recognize as reasonable. And the Supreme Court, the United States Supreme Court, said that you have no expectation of privacy when you're revealing the details of a crime to a confidant. You don't. I would not be in here arguing if the recording wasn't there. But you keep arguing. You keep saying, my client's right to privacy. Under the Constitution, he has no right to privacy. If the recording didn't exist, and perhaps I should not use that term. Well, you keep saying it, but it doesn't exist. Thank you, Your Honor. Thank you. The Court thanks both parties for the quality of your arguments today. The case will be taken under advisement. A written decision will be issued in due course.